UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ROBERT KELLY CARTER,　　　　　)
　　　　　　　　　　　　　　　)
　　　　　　Petitioner,　　　　　)
　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　)　　　　2:13-cr-00196-NT-1
　　　　　　　　　　　　　　　)　　　　2:15-cv-00186-NT
　　　　　　　　　　　　　　　)
UNITED STATES OF AMERICA,　　　)
　　　　　　　　　　　　　　　)
　　　　　　Respondent　　　　　)

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

In this action, Petitioner Robert Kelly Carter moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. (Motion, ECF No. 57.) Following a guilty plea, Petitioner was convicted of possession of firearms by a convicted felon; the Court sentenced Petitioner to 120 months in prison, followed by three years of supervised release. (Judgment, ECF No. 42 at 1-3; Indictment, ECF No. 14.) Petitioner did not appeal from the judgment.

Petitioner asserts ineffective assistance of counsel based on the following grounds: (1) failure to move to suppress evidence from a search that petitioner contends was unconstitutional (Motion at 8); (2) failure to file a notice of appeal and failure to pursue an appeal (*id.* at 4); (3) failure to investigate adequately a prior conviction that formed the basis for a sentencing enhancement (*id.* at 5); (4) failure to investigate adequately bases for mitigation at sentencing (*id.* at 6); and (5) failure to challenge adequately the requirement that Petitioner participate in sex offender treatment as a special condition of supervised release (*id.* at 8).

The Government filed a response, and requested dismissal. (Response, ECF No. 71 at 1.) Petitioner retained counsel, who filed Petitioner's reply. (Reply, ECF No. 79 at 33.)

Following a review of Petitioner's motion and the Government's request for dismissal, I recommend pursuant to Rule 7 of the Rules Governing Section 2255 Proceedings, the Court allow Petitioner twenty days to submit admissible evidence that Petitioner believes corroborates his communications with his counsel regarding the notice of appeal.  I also recommend that if Petitioner files any such evidence, the Court permit the Government to file a response to Petitioner's submission within 20 days of the filing.  I further recommend the Court deny Petitioner's motion as to the remaining claims.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2012, Petitioner's probation under a Kentucky sentence was transferred from Kentucky to Maine.  (Motion at 19; Kentucky state court petition, ECF No. 57-8 at 3, 13.)  Petitioner, therefore, was on probation at the time of the events that gave rise to the federal criminal prosecution.

According to the prosecution version, which Petitioner, in his plea colloquy, told the Court he did not dispute, one of Petitioner's female friends contacted Petitioner's probation officer on September 18, 2013, and told him that Petitioner possessed at least two handguns at his residence in Lisbon, Maine, where Petitioner lived alone.  (Prosecution Version, ECF No. 24 at 1; Plea Tr., ECF No. 54 at 13-14.)  Later that day, law enforcement and the probation officer conducted a search of Petitioner's residence, pursuant to Petitioner's probation conditions.  (Prosecution Version at 1.)  After the officers told Petitioner they intended to conduct a search based on the friend's report, Petitioner told the officers where they would find the guns; officers found the guns in the place identified by both Petitioner and the friend.  (*Id.* at 1-2.)

Petitioner was indicted in November 2013 for a violation of 18 U.S.C. § 922(g)(1), for knowingly possessing two firearms after having been convicted of the following three crimes:

(1) residential entry in Indiana (2001 conviction); (2) sexual battery in Indiana (2004 conviction); and (3) sexual abuse in the first degree in Kentucky (2007 conviction).  (Indictment at 1.)  The indictment alleged that Petitioner was subject to the penalty provisions of 18 U.S.C. § 924(e).  (*Id.*)

In December 2013, following a hearing conducted pursuant to Fed. R. Crim. P. 11, the Court accepted Petitioner's guilty plea.  (Hearing Tr., ECF No. 54 at 17.)  At sentencing, the Court concluded that Petitioner was not subject to the fifteen-year minimum sentence under section 924(e), because the residential entry conviction did not qualify as a predicate violent felony. (Sentencing Tr., ECF No. 55 at 15-16.)

The Court determined the sentencing guidelines range as follows:  The base offense level was 24, from which the Court subtracted three points for Petitioner's acceptance of responsibility, for a total offense level of 21.  (*Id.* at 20, 23.)  The Court found that Petitioner had a criminal history category of five (category V), and thus determined the guidelines range to be from 70 to 87 months.  (*Id.* at 23.)

The Court departed upward from the guidelines range, and imposed a sentence of 120 months, relying on a number of the sentencing factors set forth in 18 U.S.C. § 3553, most particularly the need to protect the public.  (Sentencing Tr., ECF No. 56 at 9-15.)  Among other things, the Court considered testimony of the woman who informed law enforcement that Petitioner had a gun; the Court also considered Petitioner's criminal history, including the convictions for residential entry, sexual battery, and sexual abuse in the first degree.  (*Id.* at 11-14).

The Court imposed a prison term of 120 months, followed by supervised release of three years.  (*Id.* at 15-16; Judgment at 2-3.)  In addition, the Court imposed, as a special condition of

supervised release, the requirement that Petitioner participate in sex offender treatment. (Sentencing Tr., ECF No. 56 at 19; Judgment at 4.)

At the conclusion of the sentencing hearing, the Court informed Petitioner that he had the right to appeal: "I want to inform you that you have the right to appeal. To effectively exercise your right of appeal, you have to be caused to be filed with the clerk of this court within 14 days of today and not after that a written notice of appeal." (Sentencing Tr., ECF No. 56 at 21.)

Petitioner asserts that he placed his section 2255 motion in the prison mailing system on May 13, 2015. (Motion at 35.) The motion was filed timely on May 18, 2015.[1] (*Id.* at 1.)

## II. DISCUSSION

### A. Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

A section 2255 petitioner must establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

---

[1] *See* 28 U.S.C. 2255(f) (providing in pertinent part that "[a] 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of – (1) the date on which the judgment of conviction becomes final.") The Government does not contest that the petition was filed timely. (Response, ECF No. 71 at 2 n.2.)

A collateral challenge is not a substitute for an appeal.  *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002).  "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127-28.  Procedural default is an affirmative defense.  *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010).  The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte.*" *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default, but only if the petitioner demonstrates both that counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced the petitioner's defense. *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)); *Owens v. United States*, 483 F.3d 48, 63 (1st Cir. 2007).  A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the test because a failure to meet either prong will undermine the claim.  *Strickland*, 466 U.S. at 697.  If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

In a claim of ineffective assistance of counsel for failure to file a notice of appeal, however, a petitioner need not allege prejudice.  *See Rodriguez v. United States*, 395 U.S. 327, 330 (1969)

(holding that "the courts below erred in rejecting petitioner's application for [section 2255] relief because of his failure to specify the points he would raise were his right to appeal reinstated"); *Bonneau v. United States*, 961 F.2d 17, 23 (1st Cir. 1992) (same).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)). In determining whether an evidentiary hearing is required, the court must "take as true the sworn allegations of fact set forth in the petition 'unless those allegations are merely conclusory, contradicted by the record, or inherently incredible.'" *Owens*, 483 F.3d at 57 (quoting *Ellis v. United States*, 313 F.3d 636, 641 (1st Cir. 2002)). Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). The Court can reasonably require a petitioner to supply the Court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

## B.  Claims and Analysis

### 1.  Failure to move to suppress (Ground Four)

Petitioner alleges that counsel was ineffective for the failure to move to suppress evidence from a warrantless search that Petitioner contends was unconstitutional. (Motion at 8.) Petitioner maintains the search, which was conducted pursuant to the probation conditions imposed as part

of his Kentucky sentence, was illegal because the five-year period of probation exceeded the three-year maximum probation term permitted under Kentucky law, and the search occurred more than three years into his probation.[2]  (Motion at 28-32.)  Petitioner alleges that he told the probation officer before the search that the maximum allowable three-year probation period had expired.  (*Id.* at 30.)

Petitioner does not allege that he had successfully challenged the Kentucky judgment prior to the search; rather, he alleges that in May 2015, i.e., more than 19 months after the search, he filed a state court post-conviction petition to challenge the length of probation in his Kentucky sentence, and he asserts the state court post-conviction proceeding was pending at the time he filed his section 2255 motion.  (*Id.* at 32; Kentucky petition, ECF No. 57-8.)  In other words, Petitioner does not dispute (1) that the Kentucky judgment and sentence were in place at the time of the search, and (2) that the search occurred within the five-year probation period imposed as part of the Kentucky sentence.

Petitioner's claim is foreclosed by the Supreme Court's decision in *Lewis v. United States*, 445 U.S. 55, 67 (1980).  In *Lewis*, the appellant challenged his conviction, under a statute that preceded section 922(g)(1), based on his contention that the predicate state court conviction was obtained when the appellant was without counsel.[3]  *Lewis*, 445 U.S. at 57-58.  For purposes of its

---

[2] Petitioner alleges that he was released from incarceration in Kentucky on November 5, 2009, and that he arranged to have his Kentucky probation supervised in Maine.  (Motion, ECF No. 57 at 19; Kentucky state court petition, ECF No. 57-8 at 2-3, 12-13.)  The prosecution version, which Petitioner told the Court in the plea colloquy was true to his personal knowledge, provides that the search that led to the federal felon-in-possession charge took place on September 18, 2013, and that it was conducted pursuant to Petitioner's probation conditions, including one that "required him to submit to a search of his home upon reasonable suspicion of his possession of contraband." (Prosecution Version, ECF No. 24 at 1; Plea Tr., ECF No. 54 at 13-14.)  Petitioner does not dispute either (1) that his probation conditions prohibited firearms possession and required him to submit to warrantless searches, or (2) that a probationer has a diminished reasonable expectation of privacy during the probationary period, *see United States v. Knights*, 534 U.S. 112, 119-20 & n.6 (2001).  (Motion, ECF No. 57 at 29; Reply, ECF No. 79 at 30.)

[3] The predecessor statute at issue in *Lewis v. United States*, 445 U.S. 55, 56 (1980), was 18 U.S.C.§ 1202(a)(1).  *See United States v. Snyder*, 235 F.3d 42, 52 (1st Cir. 2000) (describing 18 U.S.C. § 1202(a)(1) as a predecessor to 18 U.S.C. § 922(g)(1)).

analysis, the Supreme Court assumed the appellant could prove he was without counsel in the prior state court prosecution. *Id.* at 58. "[I]t is important to note that a convicted felon may challenge the validity of a prior conviction, or otherwise remove his disability, before obtaining a firearm. We simply hold today that the firearms prosecution does not open the predicate conviction to a new form of collateral attack." *Id.* at 67-68 (citing *Walker v. City of Birmingham*, 388 U.S. 307 (1967)). In *Lewis*, the Court recognized that there was "little significant difference" between the statute at issue in that case and section 922(g)(1). *Id.* at 64.

In *United States v. Snyder*, 235 F.3d 42 (1st Cir. 2000), the First Circuit held, based on *Lewis*, that a successful collateral attack on a predicate conviction for a section 922(g)(1) offense did not warrant a new trial on the section 922(g)(1) offense. 235 F.3d at 51-53 (citing *Lewis*, 445 U.S. at 60-61, 64, 65); *see also United States v. Roberson*, 752 F.3d 517, 524 (1st Cir. 2014) (noting that in *Snyder*, the Court "held that the later vacating of a state court conviction did not invalidate the defendant's federal conviction as a felon in possession of a firearm under [section 922(g)(1)] because he was a felon at the time of the charged possession").

Petitioner's challenge to the search is premised on his contention that in a prosecution under section 922(g)(1), he can collaterally challenge the state court conviction. *Lewis* does not permit such a defense; rather, the Court held that a challenge must have been filed and concluded successfully, or the disability otherwise must have been removed, before a defendant obtains possession of firearms. *Lewis*, 445 U.S. at 64, 67-68. Because Petitioner would have been precluded from challenging the Kentucky judgment in his section 922(g)(1) prosecution, the Court need not address Petitioner's underlying argument that his Kentucky probation was invalid at the time of the search. *See id.*; *Snyder*, 235 F.3d at 52-53. Given that Petitioner is not entitled to challenge his felon-in-possession prosecution on the grounds that the predicate judgment was

8

flawed, Petitioner's related claim of ineffective assistance for failure to file a motion to suppress also fails.  *See Tse*, 290 F.3d at 465.[4]

### 2.   Failure to appeal (Ground One)

Petitioner alleges that he asked counsel to file an appeal, and that counsel was ineffective when he failed to file a notice of appeal and failed to pursue an appeal.  (Motion at 4, 15.)  Petitioner contends that there are material issues of fact in dispute regarding his communication with his attorney, and he requests an evidentiary hearing to resolve the disputes.  (Reply at 3.)  Petitioner argues that an appeal was important due to the above-guidelines sentence.  (*Id.* at 4.)

On May 6, 2014, at the conclusion of the sentencing hearing, the Court informed Petitioner that he had the right to appeal:

> I want to inform you that you have the right to appeal.  To effectively exercise your right of appeal, you have to be caused to be filed with the clerk of this court within 14 days of today and not after that a written notice of appeal.  Do you understand, sir?

(Sentencing Tr., ECF No. 56 at 1, 21.)  Petitioner replied, "Yes, Your Honor."  (*Id.*)  The Court then told Petitioner:  "And I advise you that if you fail to timely file a written notice of appeal you'll have given up your right to appeal the sentence and conviction.  Do you understand that?"  (*Id.*)  Petitioner again replied, "Yes, Your Honor."  (*Id.*)

---

[4] In his reply, Petitioner also responds to the Government's argument that the search was valid, independent of Petitioner's probation conditions, because probable cause existed and Petitioner consented.  (Response, ECF No. 71 at 38; Reply, ECF No. 79 at 31-32.)  Petitioner argues that probable cause did not exist because Petitioner's friend who contacted the probation officer provided information that was uncorroborated, and the friend proved unreliable because she was not available at sentencing.  (Reply at 31-32.)  The Court need not address this argument because, for the reasons explained above, the warrantless search was valid under Petitioner's probation conditions. Nonetheless, Petitioner's argument that the friend's failure to appear at sentencing indicates that she was unreliable lacks merit because there is nothing indicating that the information obtained at sentencing about the friend's availability at that time was also available to law enforcement at the time of the search.

According to Petitioner, following the entry of the Court's judgment on May 6, 2014 (Motion at 13-14; Judgment at 1), his counsel sent him a letter dated May 7, 2014 (Letter, ECF No. 57-2), which stated in relevant part:

> I have explained to [you] that you have a legal right to appeal the sentence. I agree with your decision not to appeal. The issue for an appeal is not if we find the sentence "fair", but rather if it meets the allowable legal standard. A sentence will be []found substantively reasonable if the court has provided a plausible explanation, and the overall result is defensible. *United States v. Innarelli*, 524 F.3d 286, 292 (1st Cir. 2008). The First Circuit court of appeals recently upheld a 10 year sentence for a felon in conviction [*sic*] of a firearm with very similar facts to your case. *U.S. v. Dwayne Taylor*, No. 12-1469, Nov. 4, 2013. (Advisory Guideline range of 51-63 months and a sentence of 10 years upheld on appeal as reasonable). Most importantly, I do not expect the government to appeal the ACCA denial ruling in light of the 10 year sentence. If you were to appeal the sentence, the government could cross appeal the denial of ACCA and you could potentially face a much higher sentence triggered by your own appeal! I cannot know if the government would in fact cross appeal but this is a real risk. For these reasons, I agree with your decision not to appeal the sentence, and also recognize the final choice of an appeal is yours to make.
>
> . . .
>
> I will send to your father a copy of this letter, the judgment, docket sheet and your military medical records so he will have all of that information if you ever need it. My role in the case is now coming to an end and I will be closing our file. Should you have any future questions you certainly may write or have your father contact me.

(*Id.* at 2-3.)

Petitioner asserts he sent counsel a letter dated May 12, 2014, which letter he attached to his motion, advising counsel that he wanted to appeal. (Motion at 14; Letter, ECF No. 57-3.) Petitioner also alleges that on May 12, 2014, along with the letter, he returned a form to counsel that was similar to the form notice of appeal that counsel later provided to Petitioner on a disc that contained Petitioner's electronic file. (Motion at 15; Form, ECF No. 57-6.) The form attached to Petitioner's motion is stamped "FILE COPY;" it is unsigned by Petitioner; it references a date of April 10, 2014, which is not the judgment date of May 6, 2014; and it states in part: "IF you decide

10

to appeal, this Notice of Appeal Form must be filed with the Clerk, U.S. District Court, 156 Federal St., Portland, ME 04101 within 14 days of the day you are sentenced." (Form, ECF No. 57-6.)

Petitioner also alleges he sent counsel a letter dated January 13, 2015, which letter he attached to the section 2255 motion, reminding counsel that when Petitioner saw him after sentencing, he told counsel that he wanted to appeal. (Motion at 14; Letter, ECF No. 57-4.) The letter states:

> I have not heard anything from you in a while. The last time I saw you was after my sentencing. . . . **At that time I told you I wanted to appeal the sentence.** You left me with a "form" regarding <u>appeal</u>, which I signed and returned to you.

(Motion at 14; Letter, ECF No. 57-4.) Petitioner apparently contends that at sentencing, counsel left him with a form notice of appeal, which form Petitioner alleges that he subsequently signed and returned to counsel on May 12. (Motion at 15.) Petitioner asserts that in his January 13, 2015, letter to counsel, he also asked counsel to send him a complete copy of the case file, and in response counsel provided the disc. (Motion at 15; Letters, ECF No. 57-4, 57-5 at 2.) Petitioner evidently maintains that the form notice of appeal attached to his section 2255 motion is the form he received on the disc as part of the file counsel sent him. (Motion at 15.)

By letter dated January 22, 2015, counsel expressed his surprise with Petitioner's letter; counsel told Petitioner that "there is no appeal," and that "[y]ou told me you did not want to appeal in light of the judge's ruling that ACCA did not apply." (Motion at 14; Letter, ECF No. 57-5 at 1.) Counsel also wrote:

> Following my letter to you of May 7, 2014[,] I never heard any other thing from you until your letter to me that arrived yesterday. However, I did follow up with your father, again as you requested, and sent him your medical records which we obtained from the VA. No one ever contacted me and asked about an appeal. You not only did not seek [an] appeal, I confirmed in writing what you told me that you did not want to appeal. You never returned any signed [form] to me. In fact, the form I gave you was so that IF you decided you did want to appeal you could sign the form and mail it to the court. The form has the court's address on it and says it

must be signed and mailed to the court within 14 days of sentencing.  At sentencing
the judge told you the same thing.

(Letter, ECF No. 57-5 at 1.)

When determining whether an evidentiary hearing is needed on Petitioner's section 2255
motion, Petitioner's allegations are accepted as true, except to the extent the record demonstrates
otherwise.[5]  *See DeCologero v. United States*, 802 F.3d 155, 167 (1st Cir. 2015); *Owens*, 483 F.3d
at 57.  The Supreme Court has recognized that "a lawyer who disregards specific instructions from
the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."  *Roe
v. Flores-Ortega*, 528 U.S. 470, 477 (2000).  A petitioner need not allege prejudice, i.e., he need
not allege meritorious points he would raise if his right to an appeal were reinstated.  *Rodriguez*,
395 U.S. at 330; *Bonneau*, 961 F.2d at 23.

The current record generates several questions regarding Petitioner's alleged
communications with his counsel about the notice of appeal.  In fact, in Petitioner's section 2255
motion, he alleges two potentially conflicting versions of the events in the immediate aftermath of
the sentencing.  Through reliance on the May 12, 2014, letter he purportedly sent to his counsel,
Petitioner apparently contends he informed his counsel of his decision to appeal in writing after
considering the issue for several days. (Motion at 14-15; Letter, ECF No. 57-3.)  Based on his
January 13, 2015, letter to his counsel, to which letter counsel responded and thus received,

---

[5] The Government argues preliminarily that the claim should be dismissed because Petitioner did not make his
allegations under oath or the statutory alternative to the oath.  (Response at 25.)  The standard form that Petitioner
used states: "For this motion, state every ground on which you claim that you are being held in violation of the
Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds."
(Motion at 3.)  Because the form itself states that additional pages may be added, it is logical to conclude that the
additional pages should be considered to have been incorporated in the petition by reference and signed under penalty
of perjury. Separate filings may be another matter, but in this case, it appears that the government's objections are to
an attachment that is actually part of the petition itself.  Furthermore, the memorandum contained a statement and
signature that appear to meet the requirements of Rule 2 of the Rules Governing Section 2255 Proceedings.  (Motion
at 13.)  The allegations contained in the memorandum attached to Petitioner's section 2255 motion thus are adequately
sworn.  *See* 28 U.S.C. § 1746; Rule 2 of the Rules Governing Section 2255 Proceedings.

Petitioner evidently alleges (1) he made the decision to appeal when he consulted with counsel in person, sometime after the conclusion of the sentencing hearing; (2) in response, counsel left him with a form notice of appeal; and (3) Petitioner later sent the form notice of appeal to counsel with instructions to file it.  (Motion at 14-15; Letter, ECF No. 57-4.)

Significantly, Petitioner's assertion in his January 2015 letter that when he last "saw" his counsel he told his counsel that he wanted to appeal can legitimately be questioned, due in part to the delay between the sentencing in May 2014 and the January 2015 letter.  *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013) ("Our opinion clarifies that a federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown."); *Blackledge v. Allison*, 431 U.S. 63, 78 n. 15 (1977) (citations omitted) (noting that this was not a case in which "delay by the prisoner in seeking postconviction relief undercuts the credibility of his allegations"); *Broadnax v. United States*, No. 3:09cv720, 2013 WL 4482778, at *6-8, 2013 U.S. Dist. Lexis 118852, at *16-17 (D. Conn. Aug. 21, 2013) (holding that the petitioner's lack of corroborated contemporaneous documentation of his alleged instruction to counsel to file a notice of appeal, combined with the delay between the alleged instruction to counsel and the filing of the habeas petition, undermined the petitioner's credibility and contributed to the determination that the petitioner failed to meet his burden to prove that he instructed counsel to file a notice of appeal).

In addition, the May 12, 2014, letter is suspect because Petitioner has not provided any independent corroboration that he sent the letter to counsel.  *See United States v. Butt*, 731 F.2d 75, 80 n.5 (1st Cir. 1984) ("Evidentiary hearings have been granted to § 2255 appellants who have claimed that their plea was induced by attorney misrepresentations only when the allegations were

highly specific and usually accompanied by some independent corroboration.").  Indeed, the letter lacks counsel's address.

Given the record, the lack of corroboration in this case is particularly concerning.  In his January 13, 2015, letter, Petitioner makes no mention of the May 12 letter he maintains he forwarded to Petitioner's counsel.  Logic suggests if the letter was genuine and sent to counsel, Petitioner would have provided his counsel with a copy of the letter in January 2015, just as Petitioner filed a copy of the letter with the Court.  At a minimum, Petitioner would have referenced the May 12 letter in his January letter.

Petitioner nevertheless maintains a factual issue exists as to whether Petitioner asked his counsel to file a notice of appeal.  He thus contends an evidentiary hearing is necessary.  Even if a factual issue exists, resolution of the factual dispute does not necessarily require a testimonial hearing.  Section 2255(c) states: "A court may entertain and determine such motion without requiring the production of the prisoner at the hearing."  In situations in which a hearing of some sort may be necessary, the district court has discretion to determine whether or not to conduct a full testimonial hearing:

> What has been said is not to imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be.  The language of the statute does not strip the district courts of all discretion to exercise their common sense. Indeed, the statute itself recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner.

*Machibroda*, 368 U.S. at 495 & n.4 (citing 28 U.S.C. § 2255(c)).  Furthermore, Rule 7 of the Rules Governing Section 2255 Proceedings provides that the Court may direct the parties to expand the record.[6]

---

[6] Rule 7 of the Rules Governing Section 2255 Proceedings states:

In this case, while the Court could arguably grant the Government's motion to dismiss on the current record, to ensure that Petitioner has had the opportunity to address the issues of concern set forth herein, before the Court decides whether to grant the Government's motion, the better course would be to permit Petitioner to submit evidence, in a form that establishes its admissibility, that Petitioner believes corroborates his communications with his counsel regarding the notice of appeal.

### 3. Failure to investigate and challenge the Kentucky conviction at sentencing (Ground Two)

Petitioner alleges that counsel was ineffective for the failure to investigate and challenge the predicate Kentucky conviction at sentencing. (Motion at 5, 18.) Petitioner alleges he told counsel that he thought the Kentucky judgment was unconstitutional.[7] (*Id.* at 21.) As with Petitioner's claim regarding counsel's failure to file a motion to suppress, Petitioner's sentencing claim is based on the argument that the Kentucky conviction is flawed because the probation period provided in the Kentucky sentence was longer than permitted under Kentucky law. (Motion at 18-21; Reply at 14-26.) Petitioner argues that at sentencing, counsel failed to challenge the Court's reliance on the Kentucky conviction to raise the base offense level to 24, pursuant to U.S.S.G. § 2K2.1(a)(2); to increase the criminal history score and criminal history category, pursuant to U.S.S.G. §§ 4A1.1(d), 5A; and to depart upward from the guidelines range, pursuant to 18 U.S.C.

---

**(a)**      **In General.**  If the motion is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the motion.  The judge may require that these materials be authenticated.

**(b)**      **Types of Materials.**  The materials that may be required include letters predating the filing of the motion, documents, exhibits, and answers under oath to written interrogatories propounded by the judge.  Affidavits also may be submitted and considered as part of the record.

**(c)**      **Review by the Opposing Party.**  The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

[7] At sentencing, counsel told the Court that Petitioner had factual objections to prior convictions, including the Kentucky conviction. (Sentencing Tr., ECF No. 52 at 10.)

§ 3553(a).  (Sentencing Tr., ECF No. 55 at 23; Sentencing Tr., ECF No. 56 at 12-15; Reply at 14-26.)

The analysis of the Kentucky conviction is different for sentencing than when determining whether Petitioner committed an offense under section 922(g)(1).  *See Snyder*, 235 F.3d at 52-53. In *Snyder*, the appellant had prevailed in a collateral challenge to a predicate state court stalking conviction, and he sought to vacate his section 922(g)(1) conviction on that basis.  *Id.* at 51 & n.10. The First Circuit held that the district court did not err in denying a new trial on the section 922(g)(1) offense, but it recognized that "*Lewis* is inapplicable where prior convictions are used to determine the punishment, rather than to define the offense."  *Id.* at 53 (quoting *United States v. Paleo*, 9 F.3d 988, 989 (1st Cir. 1992)) (quotation marks omitted).

The sentencing guidelines commentary provides that in limited situations, prior convictions are not to be counted in calculating a defendant's criminal history:

> Sentences resulting from convictions that (A) have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant, or (B) have been ruled constitutionally invalid in a prior case are not to be counted. With respect to the current sentencing proceeding, this guideline and commentary do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law (e.g., 21 U.S.C. § 851 expressly provides that a defendant may collaterally attack certain prior convictions).

> Nonetheless, the criminal conduct underlying any conviction that is not counted in the criminal history score may be considered pursuant to §4A1.3 (Adequacy of Criminal History Category).

U.S.S.G. § 4A1.2 cmt. n.6; *Paleo*, 9 F.3d at 989.[8]

---

[8] In *United States v. Paleo*, 9 F.3d 988, 988 (1st Cir. 1992), the First Circuit held that 18 U.S.C. § 924(e) does not require a sentencing court "to enhance a sentence in light of an earlier conviction that the sentencing court has determined was imposed in violation of the Constitution."  The First Circuit recognized that although Application Note 6 to U.S.S.G. § 4A1.2 is broadly analogous to 18 U.S.C. § 924(e), the guidelines provision "arises in a different legal context and uses language critically different from the statute here in question."  *Id.* at 989.  In Petitioner's case, the Court determined that one of the requisite three prior violent felonies did not qualify as a predicate, and therefore section 924(e) does not apply.  (Sentencing Tr., ECF No. 55 at 15-16.)   *Paleo* is distinguishable on that basis.

Because the state court sentence had not been reversed or vacated due to an error of law, nor had it been ruled constitutionally invalid in a prior case, the Court properly included Petitioner's Kentucky conviction in the calculation of his criminal history.  *See* U.S.S.G. § 4A1.2 cmt. n.6.  The Court also appropriately considered the Kentucky conviction in its application of the sentencing factors under section 3553(a).  *See United States v. Perez-Perez*, 626 F. App'x 8, 10 (1st Cir. 2015) (per curiam) (noting that "[t]he district court expressly considered the § 3553(a) factors, noting in particular [the defendant's] prior conviction").  The claim therefore fails, as does Petitioner's related claim of ineffective assistance for failure to challenge the Kentucky conviction at sentencing.  *See Tse*, 290 F.3d at 465.

### 4.   Failure to investigate bases for mitigation (Ground Three)

Petitioner alleges that counsel was ineffective for the failure to pursue adequately two bases for mitigation at sentencing.  (Motion at 6.)

First, Petitioner alleges that the woman who was the victim in both the Indiana sexual battery and the Kentucky sexual abuse in the first degree matters recanted the allegations that led to the Indiana conviction, and that Petitioner and the victim married, although they later divorced. (*Id.* at 22-24: Reply at 27-28.)   Petitioner also alleges that the victim originally recanted the allegations that resulted in the Kentucky conviction.  (Motion at 23-24.)  Petitioner asserts that the victim failed to follow through with the recantation, and he requests the opportunity to obtain recantation evidence from counsel in the Kentucky conviction.[9]  (*Id.* at 24.)

Second, Petitioner argues that the friend who reported his possession of firearms was not a credible grand jury witness.  (Motion at 25-28; Reply at 29-30.)  The friend testified that Petitioner put a firearm in her hands against her will; Petitioner contends that counsel should have argued

---

[9] Petitioner alleges that the victim made the recantation statement in the Kentucky case to counsel, after which counsel withdrew to serve as a witness.  (Motion at 23-24.)

that the witness's lack of availability at sentencing suggested that her grand jury testimony was not credible, and that the grand jury transcript should not have been admitted.  (Motion at 25-28; Reply at 29-30.)

Both of Petitioner's arguments relate to the Court's analysis of the section 3553(a) sentencing factors, particularly section 3553(a)(1), which requires the Court to take into account "the nature and circumstances of the offense and the history and characteristics of the defendant." (Sentencing Tr., ECF No. 55 at 35-36.)  The relevant portion of the presentence investigation report states:

> On September 18, 2013, Carter's supervising officer received a phone call from a woman explaining that she had been in a relationship with Carter for three weeks and was concerned that his mental health was declining.  Specifically, the woman advised that Carter made disturbing remarks about the recent Naval Shipyard shooting in Washington D.C. and insinuated that the suspect's actions were justified.  The woman further reported that Carter was in possession of at least two firearms and that he placed a gun in her hands (on one prior occasion) even though she told him she did not want to handle it.  The complainant informed that Carter kept a revolver beside his bed on a nightstand and that a second firearm was hidden in a cloth bag in the back bedroom of his residence.  As conditions of his probation, Carter was prohibited from possessing firearms and was subject to random searches of his home based upon reasonable suspicion of a violation of his probation conditions.

At sentencing, counsel explained that Petitioner did not challenge the fact that the woman made the report.  (*Id.* at 37.)  The Court noted, however, that Petitioner contested that he had acted in the manner reported.  (*Id.* at 39-40.)

The Court granted a continuance to give the Government the opportunity to prove that Petitioner acted in accordance with the woman's report.  (*Id.* at 40.)  The Court informed the parties:

> I consider putting a firearm in the hands of someone who doesn't want to hold one dangerous behavior, and I consider that particularly in light of the defendant's past criminal history, which involved a lot of violence against women and controlling of women that I find troubling.

18

(Sentencing Tr., ECF No. 55 at 36.)  The Court noted that the conduct, if proven, would be an important factor at sentencing, in that it might mean the difference between a sentence within the guidelines range and one that departed upward from the guidelines range.  (*Id.* at 40-41.)

Following the continuance, the Government represented that it was not able to locate the witness.  (Sentencing Tr., ECF No. 56 at 5.)  In lieu of the witness's live testimony, the Government offered a transcript of the witness's grand jury testimony.  (*Id.* at 3.)  Counsel acknowledged that the grand jury testimony was admissible, but he argued that its probative value was diminished based on the testimony and the witness's unavailability at sentencing.  (*Id.* at 7-9.)  *See United States v. Dyer*, 589 F.3d 520, 531-32 (1st Cir. 2009) (noting that "the Confrontation Clause does not apply at sentencing").

The Court recognized that the grand jury testimony was hearsay not subject to cross-examination, but the Court found that the testimony was truthful.  (*Id.* at 11.)  The finding was based on (1) the consistency between the reported behavior and Petitioner's prior criminal behavior, particularly that the behavior was sexually aggressive, that it involved control issues, and that the witness did not consent to her most recent sexual encounter with Petitioner; and (2) that the witness's testimony about the location of the firearms was corroborated by the search. (*Id.* at 11-13.)  The Court also found that both the Indiana sexual battery conviction and the Kentucky conviction for sexual assault in the first degree were corroborated by physical evidence. (*Id.* at 13-14.)  Finally, the Court determined that Petitioner had engaged in aggressive conduct in the residential entry crime, and that he intended to restrain and rape the victim.  (*Id.* at 13.)  The Court thus explicitly considered the unavailability of the witness, but decided nonetheless to credit the grand jury testimony.  (*Id.* at 11.)

Petitioner's argument that counsel was ineffective for failing to seek the exclusion of the grand jury testimony is meritless, *see Dyer*, 589 F.3d at 531-32, and counsel argued that the grand jury testimony should be given less weight because the witness was unavailable at sentencing. (Sentencing Tr., ECF No. 56 at 7-9.)  Furthermore, the Court considered the evidence Petitioner offered in mitigation, including letters of support, Petitioner's military service, his employment, his mother's statements about his childhood nature, and his health issues.  (*Id.* at 14-15.)  The Court ultimately determined the protection of the public to be the overriding factor, based on the danger Petitioner posed to the community generally, and specifically to women with whom he has relationships.  (*Id.* at 15.)  Under the circumstances, counsel's performance was not deficient, nor was Petitioner prejudiced.

In support of his section 2255 argument that the victim recanted during the Indiana prosecution, Petitioner submitted an affidavit of the attorney who represented him in the Indiana case.  (Motion at 22-24; Affidavit, ECF No. 57-9.)  The attorney's affidavit alleges in pertinent part:  "[The victim] completely recanted her accusations of criminal sexual behavior to the extent that a possible obstruction of justice or perjury charge could have been leveled against her. . . .  In my opinion, [Petitioner] agreed to plead guilty to a Sexual Battery charge to shield his new wife from potential criminal charges for falsely accusing him."  (Affidavit at 1.)  In the plea transcript attached to the attorney affidavit, the attorney referred to recantation testimony the victim gave in a deposition in the Indiana criminal prosecution against Petitioner.  (Affidavit at 11.)  In his section 2255 motion, Petitioner describes the circumstances of the Indiana crime as a "love spat" that resulted in the victim's desire to do harm to Petitioner.  (Motion at 22.)  Petitioner alleges that if Petitioner's counsel at his federal sentencing had presented the Indiana attorney affidavit, the Court would have been aware that the victim recanted.  (*Id.* at 23; Reply at 28.)

It is unlikely that the recantation testimony would have altered Petitioner's sentence. *Compare Sears v. Upton*, 561 U.S. 945, 954-55 (2010) (per curiam) (noting that "there is no prejudice when the new mitigating evidence 'would barely have altered the sentencing profile presented' to the decisionmaker," but holding that the state court undertook a "truncated prejudice inquiry" under the circumstances presented) (quoting *Strickland*, 466 U.S. at 700).  The transcript attached to the attorney affidavit shows that Petitioner admitted in the Indiana plea hearing that he compelled the victim to submit to touching "by threatening her with the use of force, roughing her up, inflicting pain . . . ." (Affidavit at 10.)  The Indiana court explicitly addressed the recantation testimony, and in particular Petitioner's right to argue that he should be permitted to use it to impeach the victim and obtain a certain jury instruction, should Petitioner have chosen to go to trial. (*Id.* at 11-12.)  In addition, at Petitioner's sentencing on the federal offense, the Court found that the Indiana crime was corroborated by physical evidence.  (Sentencing Tr., ECF No. 56 at 13.)

If, at the federal sentencing, Petitioner had presented the plea transcript from his Indiana case and argued that he was entitled to mitigation because the Indiana crime was merely a love spat, given the other evidence presented at sentencing about Petitioner's treatment of women, the Court could easily have concluded that the transcript and Petitioner's argument constituted even more evidence that Petitioner engaged in a pattern of blaming his victims; at sentencing, the Court observed that Petitioner had blamed his victims.  (*Id.* at 14.)  In short, Petitioner cannot establish that counsel's failure to present the recantation testimony as grounds for mitigation constituted deficient performance, nor can he establish that there is a reasonable probability that he would have received a more favorable sentence had the recantation testimony been presented. *See Sears*, 561 U.S. at 956.

### 5.  Failure to challenge the special condition of supervised release

Petitioner alleges that counsel was ineffective for the failure to challenge adequately the requirement, imposed as a special condition of supervised release, that Petitioner participate in sex offender treatment.[10]  (Motion at 8.)  Petitioner argues that the special condition is not warranted because the felon-in-possession conviction was not a sexual crime, and he already completed a similar program as part of his Kentucky sentence.  (*Id.* at 33.)

The Probation Office recommended that sex offender special conditions be included in the sentence, including that Petitioner be required to undergo sex offender treatment, due to Petitioner's criminal history.  (Sentencing Tr., ECF No. 56 at 18-19.)  The Court accepted the recommendation of the Probation Office.  (*Id.* at 19.)  One can reasonably infer that the Court was persuaded by the rationale provided by the Probation Office, given that the Court noted that the woman who reported the felon-in-possession crime testified that Petitioner had engaged in sexually aggressive behavior, and given that the Court found that the behavior was similar to Petitioner's prior criminal history.  (*Id.* at 11.)  *See McGill*, 11 F.3d at 225.

The First Circuit has held that special conditions may be imposed at the discretion of the district court.  *United States v. Medina*, 779 F.3d 55, 60 (1st Cir. 2015) (citing 18 U.S.C. § 3583(d)).  The discretion is limited in that the special condition (1) must be reasonably related to the sentencing factors under 18 U.S.C. § 3553(a); (2) must involve no greater deprivation of liberty

---

[10] The following is the special condition:

> Defendant shall fully participate in sex offender treatment as directed by the Supervising Officer. Defendant shall pay/co-pay for services during such treatment, to the supervising officer's satisfaction.  He or she shall scrupulously abide by all policies and procedures of that program. During sex offender treatment, Defendant shall, if required by the therapeutic program, undergo periodic random polygraph examinations to ensure compliance with the therapeutic program requirements.  No violation proceedings will arise solely on Defendant's failure to pass a polygraph examination or on Defendant's refusal to answer polygraph questions based on 5th Amendment grounds.

(Judgment, ECF No. 42 at 4.)

than is reasonably necessary under section 3553(a); and (3) must be consistent with any pertinent policy statements issued by the Sentencing Commission, pursuant to 28 U.S.C. § 994(a).  18 U.S.C. § 3583(d); *Medina*, 779 F.3d at 60.

In Petitioner's case, the requirement that he participate in sex offender treatment was reasonably related to the section 3553(a) sentencing factors, particularly Petitioner's prior criminal history and the factual circumstances reported in the felon-in-possession offense.  *Compare Medina*, 779 F.3d at 60, 63 (citing 18 U.S.C. § 3553(a)(1), (2)(B), (2)(C), & (2)(D) and concluding that there was no evidence that linked the special condition at issue in that case to the risk of recidivism).  In Petitioner's case, the Court explicitly found that Petitioner had used violence to perpetrate the prior sexual crimes, and the Court found that the section 922(g)(1) crime also involved sexually aggressive behavior.  (Sentencing Tr., ECF No. 56 at 11.)  In other words, the Court found, in Petitioner's case, a link between the special condition and the section 922(g)(1) offense.  The record, therefore, supports the imposition of a special condition of sex offender treatment as part of Petitioner's sentence for the section 922(g)(1) crime.  *See United States v. Webster*, 819 F.3d 35, 41 (1st Cir. 2016) (holding that "the district court sufficiently articulated the need for sex offender treatment and polygraph testing" when it "provided a detailed accounting as to why the imposed conditions were appropriate").

Because the special condition is reasonably related to the sentencing factors, the underlying argument lacks merit, and consequently the related ineffective assistance claim also fails.  *Tse*, 290 F.3d at 465.

### III.   CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases.  As to Petitioner's claim regarding the notice of appeal,

I recommend, pursuant to Rule 7 of the Rules Governing Section 2255 Proceedings, the Court allow Petitioner twenty days to submit admissible evidence that Petitioner believes corroborates his communications with his counsel regarding the notice of appeal.  I also recommend that if Petitioner files any such evidence, the Court permit the Government to file a response to Petitioner's submission within 20 day of the filing.  I further recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255 on all remaining claims.  I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases on the claims the Court denies because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 10th day of November, 2016.